IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENNIS KREASHKO,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 24-288 |
| | ) |
| GILPIN TOWNSHIP, SOUTHERN ARMSTRONG REGIONAL POLICE DEPT., f/k/a GILPIN TOWNSHIP POLICE DEPT., and ARMSTRONG COUNTY DISTRICT ATTORNEYS OFFICE, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Presently before the Court are Motions to Dismiss the Complaint filed on behalf of Gilpin Township and the police department (collectively, "Gilpin") (Docket No. 11) and the Armstrong County District Attorney's office ("DA") (Docket No. 9). The motions are thoroughly briefed (Docket Nos. 10, 12, 13, 15, 16, 17) and are ripe for decision. For the reasons set forth herein, the motions will be granted.

I.  **BACKGROUND**

As an initial matter, it is clear from the briefing that several matters are no longer in dispute:

(1) Plaintiff Dennis Kreashko agrees that Southern Armstrong Regional Police Department is not an appropriate defendant and cannot be sued as an entity separate from Gilpin

---

[1] Herein, the Court identifies Plaintiff as his name appears on the Docket in this case. However, the Court notes that Plaintiff's name is spelled "Kreashko" in the caption of the Complaint and on the Docket, but it is spelled "Kraeshko" in the body of the Complaint and on the Civil Cover Sheet. (Docket Nos. 1, 1-1).

Township (Docket No. 15 at 2). Therefore, Southern Armstrong Regional Police Department will be dismissed from the case;

(2) Plaintiff agrees that the applicable statute of limitations is 2 years and he cannot recover damages from events occurring more than two years prior to the filing of the Complaint in March 2024 (Docket No. 15 at 2). The Court, therefore, will not discuss any causes of action based on conduct that occurred prior to March 2022; and

(3) There is only one claim asserted against the DA, which is based on the alleged failure to honor the lifting of a detainer issued by a North Carolina court (Docket No. 13 at 1).

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the Complaint and in the light most favorable to Plaintiffs, that are relevant to the disputed aspects of the motions presently before the Court.

A. Allegations against Gilpin

The formatting of the Complaint is somewhat confusing. There are numerous Roman Numeral headings, but those headings do not correspond to counts of the Complaint. Instead, the cause(s) of action against Gilpin are set forth at section IX. Plaintiff alleges that Gilpin, through its police chief and police department, has engaged in a practice and policy of violating his civil rights. ¶ 90. Plaintiff alleges that over the years (including prior to March 2022), various unnamed employees of the Gilpin police department failed to enforce the law to his benefit; targeted him with meritless complaints; engaged in unlawful searches and seizures; unlawfully imprisoned him; and attempted to entrap him, in violation of the 4th and 14th Amendments. ¶ 97.

The allegations about failing to enforce the law to his benefit and targeting him with meritless complaints are based on conduct prior to March 2022 (*see* ¶¶ 11-45). Because Plaintiff

agreed that claims based on that conduct are barred by the statute of limitations, the Court will not discuss them further.

Plaintiff contends that he was falsely charged with corruption of a minor arising from an incident in May 2022. ¶¶ 46-80. Plaintiff explains that on May 13, 2022, he observed an argument involving a young woman ("Jane Doe"). A Leechburg police officer arrived and Plaintiff offered to remove Jane Doe from the scene to keep her from being arrested. Plaintiff allowed Jane Doe to stay at his house that night. On the evening of May 13, 2022, the Gilpin Township police chief came to Plaintiff's house, interviewed Jane Doe and then left. ¶¶ 61-62. The next day, an unidentified Gilpin Township police officer questioned Jane Doe at Plaintiff's home. Jane Doe stayed at Plaintiff's house again that night. On May 15, 2022, Gilpin police, Manor police, a CYS caseworker and Jane Doe's mother came to Plaintiff's home and took Jane Doe into custody. ¶¶ 68-69. Jane Doe was given a drug test, which she failed. ¶ 70. Jane Doe informed the police that Plaintiff did not give her drugs and provided the names of the persons who had supplied the drugs. ¶ 71.

Jane Doe was placed at Shuman Center. While she was there, "Gilpin police" pressed her to state that Plaintiff gave her drugs. After three days at Shuman Center, "Gilpin police" told Jane Doe she would be released if she would say that Plaintiff gave her drugs. Under coercion, Jane Doe did so. ¶ 78. Despite knowing that Jane Doe was coerced into making a false statement, Gilpin police arrested Plaintiff and put him in jail on a false charge of corrupting the morals of a minor. ¶ 79. The charges against Plaintiff were dismissed at a preliminary hearing.

The alleged unlawful search and seizure occurred at the preliminary hearing. Plaintiff gave private notes to his attorney, who handed the notes to Plaintiff's friend. A Gilpin police officer, without a search warrant, grabbed the notes from the friend and refused to return them. ¶ 83. No

further details were pleaded. Plaintiff also alleges, conclusorily, that while he was incarcerated Gilpin police searched his house without a warrant. ¶ 84.

It is unclear whether Plaintiff asserts that Gilpin (in addition to the DA, discussed below) is responsible for failing to lift the North Carolina detainer. Plaintiff avers that he was prepared to post bond after his arrest for corrupting the morals of a minor, but was unable to do so because the charge triggered a potential violation of his probation in North Carolina. While in jail, North Carolina authorities informed the "Gilpin Police" they could lift the detainer for the probation violation, but the "Gilpin Police" unlawfully kept Plaintiff incarcerated. ¶¶ 85-88.

B. Allegations against DA

Plaintiff, somewhat duplicatively, avers that the DA also "refused to honor the North Carolina order directing the lifting of the detainer and unlawfully kept the Plaintiff incarcerated." ¶ 101. Plaintiff alleges, conclusorily, that this decision was part of a policy regarding targeting of Plaintiff.

II. **STANDARD OF REVIEW**

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the Court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007). While Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled

4

to relief,'" the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555). Moreover, while this standard "does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court notes the elements of a claim. *See id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the Court eliminates conclusory allegations. *See id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court assumes the well-pleaded facts that are left are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Also, in reviewing a motion to dismiss, "a court may, in addition to the contents of the complaint, consider any attached exhibits and evidence

5

beyond the complaint including public records . . . , documents essential to [plaintiff's] claim which are attached to defendant's motion, and items appearing in the record of the case." *Smith v. Lincoln Ben. Life Co.*, Civ. Action No. 08-01324, 2009 WL 789900, at *5 (W.D. Pa. Mar. 23, 2009) (internal citation and quotation marks omitted), *aff'd*, 395 F. App'x 821 (3d Cir. 2010).

Additionally, in the courts' consideration of whether claims – if they are to be dismissed – will be dismissed with prejudice, Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend should be freely given "when justice so requires." Denial of leave to amend may be appropriate where there is "'undue delay, bad faith, dilatory motive, prejudice, and futility.'" *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

### III.   LEGAL ANALYSIS

#### A. Municipal Liability

Plaintiff must assert a "*Monell*" municipal liability claim against Gilpin. *See Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Under *Monell*, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id.* at 694. In other words, a municipality cannot be held liable on a theory of respondeat superior. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*

In *G.S. v. Penn-Trafford School District*, No. 20-3281, 2023 WL 4486667 at *3 (3d Cir. July 12, 2023), the Third Circuit Court of Appeals explained that a municipal entity "may incur *Monell* liability under Section 1983 for a violation of an individual's constitutional rights when it

6

implements an official policy or custom that results in a constitutional deprivation." The court noted that if an official without policymaking authority violates a plaintiff's constitutional rights, a municipality can be held liable "if the final policymaker either acquiesced in the subordinate's decisions or delegated authority to him or her." *Id.* at *4; *accord Kelly v. Borough of Carlisle*, 622 F.3d 248, 264 (3d Cir. 2010) (subordinate's decisions can only establish policy "if a municipal policymaker delegated power to the employee or ratified his decision.").

The allegations in the Complaint fall far short of the standard needed to plausibly state a municipal liability claim against Gilpin. Plaintiff argues that Gilpin is liable through "it's Police Chief." ¶ 10. The only specific averment with respect to involvement by the police chief, however, is that on May 13, 2022, the Gilpin Township police chief came to Plaintiff's house, interviewed Jane Doe and then left. ¶¶ 61-62. There is nothing about that conduct that would permit a reasonable inference that the police chief had a policy and practice to violate Plaintiff's rights. There are no averments at all about conduct by any other policymaking officials.

The remainder of the Complaint contains vague allegations that unnamed members of the "Gilpin police" took various actions. None of those individual police officers were named as defendants in this case. As explained above, Gilpin cannot be held liable for the actions of its employees under respondeat superior. There are no averments by which the Court could infer that the police chief (or other policymaker) was aware of those actions, let alone acquiesced in or ratified the subordinate's decisions or delegated policymaking authority to those subordinates.

In summary, Plaintiff's allegations that various Gilpin police officers took wrongful actions against him over the years do not suffice to establish that the municipality adopted an unconstitutional policy or practice. *See Brown v. City of Pittsburgh*, 586 F.3d 263, 292 (3d Cir. 2009) ("[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability

7

under *Monell*, unless proof of the incident includes proof that it was caused by an existing ... municipal policy, which policy can be attributed to a municipal policymaker.") (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985) (plurality opinion)). The claims against Gilpin will be dismissed.

### B. Liability of the DA's office

Plaintiff's only claim against the DA's office is based on the alleged failure to lift the North Carolina detainer. There are numerous fatal flaws with this claim.

First, for the reasons set forth above, the DA's office is not subject to respondeat superior liability for the actions of its employees. Even if one of the DA's employees wrongfully failed to lift the detainer, it would be incumbent upon Plaintiff to show an unconstitutional policy or practice of the DA's office to establish *Monell* municipal liability. Such allegations are completely absent from the Complaint.

Second, in *Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997), the United States Court of Appeals stated: "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability." The Court explained that the County and the District Attorney's Office are separate entities and the District Attorney is independently elected. *Id.* at 146 (citing the Constitution of Pennsylvania, Article IX, § 4). Since *Reitz*, district courts have relied on that statement and held that the D.A.'s Office is not an independent state entity for purposes of § 1983 liability. *See Sourovelis v. City of Philadelphia*, 103 F. Supp. 3d 694, 711 (E.D. Pa. 2015) (collecting decisions, but declining to follow *Reitz*). The majority of courts continue to follow *Reitz*. See *Popichak v. Peurifoy*, No. 23-CV-3678, 2023 WL 6810096, at *4 (E.D. Pa. Oct. 16, 2023) ("Any official capacity claim against the prosecutor attorneys is not plausible because

district attorney's offices in Pennsylvania are not entities subject to suit under § 1983."); *Washington v. Lehigh Cnty. Dist. Attorney's Off.*, 541 F. Supp. 3d 536, 549 (E.D. Pa. 2021) ("The Lehigh County District Attorney's Office must be dismissed with prejudice on the alternate ground that the United States Court of Appeals for the Third Circuit has held that district attorney's offices in Pennsylvania are not entities subject to suit under § 1983.").

Third, if it reached the issue, the Court would conclude that the DA is entitled to absolute immunity in connection with the decision whether or not to release Plaintiff from custody. In *Popichak*, the Court stated: "To the extent that Popichak bases his claims on allegations that the prosecuting defendants were involved in placing a detainer on him or recommending that bail be denied or revoked, these acts are also entitled to absolute immunity." 2023 WL 6810096, at *5 (citing *Giallorenzo v. Beaver Cnty.*, No 06-0354, 2006 WL 3145126, at *6 (W.D. Pa. Oct. 31, 2006), aff'd, 241 F. App'x 866 (3d Cir. 2007)). In *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 159 (S.D.N.Y. 2007), the Court noted that "the affirmative decision to issue a detainer has been held to be protected by absolute immunity on the grounds that securing a prisoner for prosecution is a prosecutorial function" and reasoned by analogy that "the concomitant decision to withdraw a detainer should be as protected as the prosecutor's initial decision to file one."

The facts as pled in the Complaint do not establish that the DA acted in a purely administrative capacity in lifting the North Carolina detainer. The Complaint, on its face, indicates that Plaintiff was also detained as a result of the Pennsylvania corruption of minors charge. Complaint ¶ 98. Obviously, a North Carolina court could not order a Pennsylvania DA to release a Pennsylvania detention order. The Court would conclude that under the circumstances pleaded in the Complaint, decisions involving detainers to secure a prisoner for trial, including refusing to lift the North Carolina detainer, are entitled to absolute immunity.

In sum, the claims against the DA will be dismissed.

### C. Leave to amend

Rule 15(a)(2) instructs that courts "should freely give leave" to amend. If a complaint in a civil rights case is subject to dismissal, courts in the Third Circuit must grant leave to amend, regardless whether leave was requested, unless doing so would be inequitable or futile. *LabMD Inc. v. Boback*, 47 F.4th 164, 192 (3d Cir. 2022).

The Court, in the exercise of caution, will give Plaintiff leave to amend the Complaint against Gilpin. The Court is unable to conclude, on the current record, that amendment against Gilpin would be futile. The claim against Gilpin will be dismissed without prejudice. Because stating a cognizable § 1983 claim against the DA would be futile, the Court will deny leave to amend that claim and the DA will be dismissed with prejudice.

### IV. **CONCLUSION**

For the reasons set forth above, the Motion to Dismiss the Complaint (Docket No. 11) will be granted; the claim against Gilpin Township will be dismissed without prejudice; and the Southern Armstrong Regional Police Department will be dismissed from the case with prejudice. The Motion to Dismiss the Complaint filed by the Armstrong County District Attorney's office (Docket No. 9) will be granted and the claims against the DA will be dismissed with prejudice. If Plaintiff intends to file an amended complaint against Gilpin Township, he shall do so on or before February 28, 2025.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: January 29, 2025

cc/ecf: All counsel of record